UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: 22-cr-10274-DJC |
| | ) | |
| v. | ) | **LEAVE TO FILE GRANTED ON** |
| | ) | **FEBRUARY 1, 2024** |
| FRANK LOCONTE, | ) | |
| Defendant | ) | |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

Pursuant to the Court's Order (Dkt. #83), the United States submits this Supplemental Memorandum to clarify issues raised in defendant's sentencing memo (Dkt. # 80)("Def's. Sent. Mem.") relating to the loss amount.

**1. Defendant argues the loss should be based solely on the loss arising from under-the-table payments to NER employees. (Def's. Sent. Mem., pp. 2,12.)** The Indictment encompasses defendant's failure to pay taxes on bonuses and vehicle expenses that were in lieu of raises. *See*, Indictment, ¶'s 19, 20. Defendant agreed to these facts during his Rule 11 hearing. Even if these allegations were not part of the indictment, which they are, they constitute relevant conduct and are properly included in the loss amount.

**2. Defendant suggests the vehicle expenses and vendor payments should not be included in the loss amount because the government has provided "minimal information" as to how it determined these payments were part of the scheme. (Def. Sent. Mem. pp. 5, 12).** The method used to calculate the loss amount, along with hundreds of pages of back up documentation, and reports of interview ("ROIs"), were provided to defendant, and is set out in the affidavit of IRS SA Colleen Ranahan Affidavit, Exhibit 2. No less than five witnesses reported to the government, some under oath, that they received vehicle expenses in lieu of raises. In addition, former NER controllers admitted that defendant improperly provided vehicle payments in lieu of raises in order to avoid payroll taxes. The ROIs are available for review by the Court.

**3. Defendant seeks to exclude Non-P Office Staff Cash issued between November and April and in amounts under $2,000.00 (Def's. Sent. Mem., pp. 10-11).** These amounts should not be excluded for the reasons outlined in the affidavit of Christian Ruehrwein, attached hereto.

**4. Defendant misstates the offer made by NER's counsel relating to the victim impact statement. (Def's. Sent. Mem., p. 4)** Counsel for NER have informed the government that, during the civil settlement process, NER offered to provide a favorable victim impact statement if defendant agreed to pay the full union and tax liabilities. Defendant refused all offers to settle based on those terms.

**5. Defendant claims that taxes from 2020 through 2022 had been properly deferred (Def's.**

**Sent. Mem., p.7 ).** Taxes were not properly deferred. *See*, Government's sentencing memo, p. 7. For the fourth quarter of 2020, NER filed its Form 941 and included a deferral of the 6.2% employer social security. However, NER only paid a portion of the amount due as required under the deferral program, which should have invalidated the entire deferral under the dictates of the program. Instead, when the IRS determined the outstanding tax liability for NER for the fourth quarter of 2020, the entire credit was given to NER as the date to pay the second 50% had not yet passed, thereby understating NER's true tax liability for the fourth quarter of 2020. The tax deferral program therefore has no impact on the tax loss number.

**6. Defendant suggests that his failure to pay taxes as alleged in Count Ten was due to an error, a mistake. or perhaps bad advice from accountants. (Def's. Sent. Mem., p. 7)** NER had payroll tax problems in the past as evidenced by a 2018 settlement agreement with the IRS to pay an outstanding balance of $785,678. Two of defendant's accountants reported that they counseled defendant about timely payment of payroll taxes. A consulting group hired by defendant, as well as testimony and emails from defendant's accountants and controllers, reports of which have been provided to defendant, evidence that defendant was warned that, "the practice of deferring payments for past due withhold taxes is the worst sin you or the company can do …" and advised him to eliminate the practice. Defendant's business practice involved a pattern and practice of either delay or failure to pay as evidenced from the MLBF's victim impact statement. Defendant's failure to pay payroll taxes was an intentional act. Had this been a mistake or error, it is doubtful defendant would have pled guilty.

**7. The government did not double count the employee retention credit. (Def's. Sent. Mem., p. 8).** The employee retention credit was deducted from the total amount owed to the IRS and should be credited to NER by way of restitution. *See* IRS SA Colleen Ranahan Affidavit, Exhibit 2, ¶'s 6, 9.

**8. The checks categorized as Office Staff Cash are correctly identified. ( Def's. Sent. Mem, p.10).** Witness testimony supports DOL's calculations, including one former controller who stated that he was aware that checks were being written to certain management employees at NER who cashed the checks at a bank for later distribution to those employees who were part of the Flowers program. Contrary to defendant's claim, one of the individuals who agreed to cash the checks, according to at least one witness, was Mike Walsh, Sr. (Def's. Sent. Mem., p. 11). This ROI was provided to defendant.

**9. Defendant's claims that he did not receive NEM vendor reports. (Def's. Sent. Mem., FN 6) is correct.** There are no NEM vendor reports. The affidavit of IRS SA Colleen Ranahan inadvertently referred to the vendor reports as "NEM" reports rather than "NER" reports.

**10.. Defendant suggests that he reported personal expenses on his personal taxes and that it is not illegal to run personal expenses through a private company. (Def's. Sent. Mem., p. 19).** Failure to report income on one's personal tax return is illegal. The government did not charge defendant with this additional violation, nor is it included in the loss amount, because his counsel repeatedly assured the government that defendant was going to enter a guilty plea and

requested that the government not supersede the indictment.

**11. Footnote 10 of Def's. Sent. Mem. arguing that NER's employees did not push back on the under-the-table payments is false.** If necessary, the government can provide the Court with the ROIs evidencing that many of these employees did not want to participate in the Flowers program and did complain about the practice.

**12. Defendant's assertion that John Bosen has no personal knowledge of the statements in his affidavit is wrong. (Def's. Sent. Mem., p. 22).** Mr. Bosen is the President of NER/NEM and Chairman of the Board of Directors. As such, he is certainly well versed in NER/NEM's finances and the harm caused to NER as a result of defendant's illegal payroll scheme.

**13. NER, its shareholders and employees *did* suffer losses from defendant's illegal actions. (Def's. Sent. Mem., p. 22).** NER's employees who were paid under-the-table lost collectively bargained for income and contributions to their fringe benefits. The government calculated the loss amount for those overtime hours, as stated in the Ruehrwein affidavit, Exhibit 1, § 21 as $576,408.75. Similarly, NER has been exposed to significant tax liability as a result of defendant's intentional failure to collect and pay over payroll taxes as well as depletion of its assets due to defendant's use of NER money to pay for his personal expenses.

**14. The government did not aver that Nick Sylvester did not know about the under the table payments. (Def's. Sent. Mem., p. 23)**. The government stated that there was no evidence that Mr. Sylvester was aware of the scheme to defraud the Benefit Funds and IRS.

**15. Exhibit N attached to Def's. Sent. Mem. from a former NER controller is particularly concerning.** The witness who authored Exhibit N provided three witness statements to the government and sworn testimony which are at odds with Exhibit N. The witness unequivocally told the government that the "biggest mistake" made by the witness was working at NER and having "him manipulate me." The witness further stated that, "it is the leadership that is the problem here." This same witness provided some of the more compelling evidence that helped the government decipher the vendor reports, which revealed that the vehicle expenses, in lieu of raises, and bonuses, were all untaxed. In addition, this witness was able to review the payroll inquiry reports and identify which vehicle expenses were legitimate and which were not. Notably, the witness directed that 1099's be issued for the bonus' but was directed by defendant to pull them back. The ROI's and testimony of this witness are available for review by the Court.

                                            Respectfully submitted

                                            JOSHUA S. LEVY,
                                            Acting United States Attorney

By:    */s/ Laura J. Kaplan*
        LAURA J. KAPLAN
        Assistant U.S. Attorney

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Date:   February 6, 2024                          */s/ Laura J. Kaplan*
                                                  Laura J. Kaplan
                                                  Assistant United States Attorney